He's a court. I'm Ahmed Chabook. I represent a talented plaintiff, Frances Miller. And I'll try to make it very short, since I have ten minutes only. The main issue is we are, of course, asking this Court to reverse summary judgment dismissal by the district court of Ms. Miller's old claims. And the simplest, I guess, first issue is that Ms. Miller had pled in the pleadings a period of time for a claim for disability. And a part of that claim on a during the administrative appeal, it was already approved, even though initially everything was denied. And Ms. Miller was never paid for that. And then so therefore, on that issue alone, summary judgment Are you talking about the week or something? Two weeks, I believe. Well, wasn't it total? They conceded three weeks, and the date they put was two weeks or something? Apparently, initially, their experts gave dates, I believe, August 22, September. And then when the administrator made the decision, she apparently even shortened that for some reason without an explanation. And then they never paid for that. Well, one other thing. I was just going to say, do you really raise that issue? You say that that shows that the ALJ was careless, and that's why there's other mistakes. But do you specifically appeal on that that period of time was arbitrary and capricious? This one was separate than arbitrary and capricious, I believe, Your Honor, simply because they admitted. So I feel that as a separate error, I suppose, I guess, I simply said one of the first issues I raised is that admitted period, even if she wasn't paid. I think that one of the things that I believe I saw in their brief was that she was paid a regular salary during that period. When did her regular salary stop? Your Honor, she was paid, apparently, afterwards. She got some payment for the time that she was married or she was not denied earlier, before she was fired. I think they might have sent her a check for whatever accounting came up, but for the disability was handled, was going to be handled by the plan, not for the actual employment office. So that plan period that was supposed to be coming, and then Ms. Miller was directed to contact that office. And repeatedly, that office, that's in Ms. Miller's declaration, would say they'll get back to her. They'll get back to her, and they never did. And that source of the money are from two different sources. The regular salary is from Verizon Wireless period, and this disability period was supposed to come from the plan. The plan administered, and she was never paid. Was she paid her salary for the period of disability? No, Your Honor, she was not, absolutely not, no, Your Honor. So they wrote, apparently, there was an argument, but there was no actual record to show it wasn't the case, as I said. I repeat myself, but she only received salary from the employer, nothing from the plan. Yes, but the employer, she received salary for what period? When did her salary stop? Well, when she was disabled, took disability claim, her salary stopped. Then her disability was supposed to be processed by the administrator, and that's what's left. And then she was fired after that. So it came completely, her income came completely to a stop. So I'm sorry, is there any? Anyway, so the other issues, the other issues is that the denial based on the record was arbitrary and capricious. And initially, the plan administrator simply denied. During the administrative appeal process, when they approved this first issue I just mentioned, period of time, the appeal, an expert the plan administrator hired said that additional documentation, additional tests were needed and went through some kind of a quite a bit of a technical terms and medical terms. And by that time, Ms. Miller was already dismissed, fired, did not have any insurance, did not have any. And as a single mother with a minor child, I believe at that time the child was around 10 years old. And then, ironically, disability is not simply a broker limits of the mental, depressed all day long, curtains closed, she can't go to work, all these things. And this is the person that is expected, I assume, to make all these very professional inquiries as to where to find certain specialists, certain tests. She's already helpless. That's the reason she was fired. And she's supposed to get certain things. And all the things she was told was, well, the record doesn't have this and this and that. Therefore, your claim is denied. Therefore, your Honor, we rely on this Ninth Circuit Court of Appeals decision to a degree in this. I gave this citation, Bluton v. Lockheed Medical. And in there, that this Court of Appeals ruled that even though in this case the plan gave the discretionary authority to the administrator, however, they did not have unbound discretion. They can't simply say, well, since you don't have this and that, we deny, they should give some assistance. And then none of them, especially in a case of a mental disability and where they cannot even make a phone call, quit. So in that – for that reason, we rely on this, and I – we have this citation from the ruling in the Bluton case. Also, similar rulings came in different jurisdictions, and we did not cite that as an authority, only in an effort to argue this. And as I said, one of the cases was in – from Tenth Circuit, and I guess I – it's in my brief, where it says that the – the appellant argued in the other case, in the Bluton, inadequate record, therefore, case was dismissed, claim was dismissed. And then the – the appellant made an argument that he should have given proper reasoning – reason – assistance as to where I can get the help and this and that. And then Tenth Circuit Court of Appeals agreed with that. So we are asking this Court to adopt perhaps combined similar to Bluton court decision and make certain requirements on the defendant, where – where the helpless person, a single mother, disability, and she's helpless, someone has to help her. And then – so another similar decision we kind of used only in an effort to persuade this Court, not as an authority, is that Federal Court. And this Omasta v. Choice Benefit Plan in the Utah district, and that where the plan's own medical consultant said you should get updated records. They didn't say record shows that this person is not disabled. We don't say anything disabled. There is something wrong, disability, but we need to get updated medical return. And – and the plan administrator dismissed the case. Well, then – so this is the district court. I do not have any evidence of whether it was appealed in a – in a circuit court, made a ruling on that. I don't have any. So in this case, the expert hired by the plan and the administrator specifically said that with all these technical terms, these tests are needed. They said that didn't say, well, our record doesn't show any disability. It said we have all these things that we needed. And then that record went to the plan administrator, and that administrator is still saying, okay, we need to cooperate, coordinate with you, you need to coordinate with us, and we'll see what you can do. Instead of asking, initiating any kind of a dialogue, they said, your claim is denied. This is the end of it. So therefore, Your Honor, we are asking this Court to apply the ruling in this case as well to what my circuit court has decided is in Bhutan, and then perhaps maybe we can get aspects of the other jurisdictions' cases that I mentioned. I didn't keep my time, Your Honor. All right. You have, like, 40 seconds. So why don't you state that for rebuttal. Okay. Thank you. Thank you. May it please the Court. Good morning, Your Honors. Good morning. Pardon me. I guess I'll have a nice presentation all set, but I'll start with the Olmaster case. I forgot your name. Oh, I'm sorry. David Schmidt on behalf of the defendant. Okay. They taught us that in law school, and I forgot. Well, it's been a while since we all went to law school, so. I did have a question about the apparently K&S authorized benefits for two weeks, 827.02 to 910.02, but the testimony by Dr. Mendelson was 820.02 to 910.02. Is there, how does the record support the numbers of 827.02 to? I honestly don't know. That's the first time I've heard that discrepancy brought up. Is it, was it raised on appeal? No, I've never heard that. You're the first person to raise it. So, I know that there was, they were approved, the plan was approved for a specific period of time, and that, and this addresses the first issue that was raised. The reason she didn't receive a check was that because she had been erroneously receiving her full paycheck. And. Is the record established when that stopped? No, I don't believe so. You don't know whether she got paid or not for this period? No, I mean, I have no evidentiary proof. What, as the district court raised, you know, said in its opinion, it said, this was being brought up for the first time on, you know, in a response to a summary judgment motion. It was not in the complaint. I did question my client, my client, because we were going through settlement discussions, and that was one of the aspects of the settlement discussion was, well, do we owe her this money? And they checked it out, and they said, no, actually, she owes us money, because we overpaid her for. This is all outside the record. Yes. So. All right. So. No, but the, but if you, you say, I'm surprised to hear you say this is the first time you heard this question asked, that Judge Dolan asked. I would think it's subsumed within the statement of issues. The first issue is stated that, for an appeal, the defendant decided for partial benefits but didn't pay it. That's the issue, right? The, that was the issue. In other words, the plan concluded that partial benefits were due. You agree with that? Right. Yeah, we agree to that. Then the next assertion is that the plan didn't pay for it. That's in the appellate brief. Right. So why do you say it's the first time you heard of it, that they didn't pay for all the benefits that they said were due? No, no, no. It's the first time that the discrepancy between the dates was brought up, that, that the Chair raised. I, I had not noted that, you know, that was the. Well, what do you think the statement meant that, you know, decided for partial benefits but never paid it? What does that mean? Well, no, I understand that. I think that's a separate issue than, than what the Justice was mentioning. She was, she was talking about a discrepancy between. Right, but a partial, if, if the court ordered three weeks and you, but then, well, if the testimony was for three weeks is what she was entitled, but then the court ordered two weeks and there's no indication how the court came up with those two weeks, that's obviously, two weeks is a partial payment of three weeks of what the testimony supports. So, that was my question there, but then the issue is, the partial benefits that he's arguing about here, does it have anything to do with that week, or is it a broader issue? I, it must have just something to do with the, that week. I, I don't think it's part of the broader issue that, that we're here about today. I'm not quite sure how you resolved something like that because it was not, it was not heard in the district court, you know, the district court didn't take evidence on, on whether payments had been made or not. Because the district court determined that because it had not been raised in the complaint, that it was outside the scope of the lawsuit. And so, and so we never have presented actual documentary evidence to establish that she was paid during that period. I, I don't know if, if you would remand for that, or if you would agree with the district court that it's not properly brought because it was not in the complaint. That would be our position also. The Omaska case that, that the council brought up was, was from a different jurisdiction. But it also, the, the, the key part of that case was that there was a conflict of interest. The claims administrator was also the, the payer. And the court said that because of that, that they needed to do a better job of reviewing the claim. I think it was yeah, the, the, the plan administrator failed to provide adequate notice to the insured that he needed of the evidence. He needed to support his claim and then stress the conflict of interest. Neither one of those are issues before this, this court. What's the primary medical evidence that the administrator relied on in denying the great fault of the plan? Okay. Well, first, there, there were two peer reviewers. And the first one, Dr. Superfine, he was an internist. He conducted a peer-to-peer consultation with the plaintiff's primary care physician. And during that discussion, the plaintiff's primary care physician said that the plaintiff was not disabled from a physical standpoint. He also wrote in his, in notes, I think, in the, it was, sorry. It was a September 2002 letter that the plaintiff had normal speech, or as in his records, normal speech, thought, production, no psychomotor slowing or cognitive problems. Now that was the internist writing that in his report. When, when the, when they did the first claim review. That's when the, the issue of a, maybe a psychological disability was raised. And so in the claim denial of the letter, they said, well, we, there is no documentation to support a disability. If you feel you have a disability from a psychological standpoint, you need to provide us with, you know, objective data that's in the, in the claim denial letter. Need to inform the plaintiff of the need to submit formal psychological test results, mental status evaluations, and, and none of that was done. What, what Dr. Mendelson, the, the, the peer reviewing neuropsychologist did was, she noted in the records that, that the psychologist, the psychiatrist had written that upon discontinuation of the drug bromocriptine, that the, that the, the plaintiff's condition had improved. There's no other documentation other than that in the file. The, the only documentation that, that subsequently came, came about one year later. And the plaintiff has, I'm not sure he even mentioned it today, but he does in his briefs, that he wants, he wanted, wants you to force us to consider additional information that was submitted, you know, over a year after the claim was denied. And that's all information that could have been submitted, you know, during the initial claims process, because it was specifically listed in the claim denial letter.  All they got from the, from the psychiatrist was just basically a letter describing some symptoms and mentioning that she had discontinued the bromocriptine and that her condition had improved. But that she might, that she would need some further evaluation. And that was it. That was all the evidence that was submitted in support of the disability. And so the, the clinical neuropsychologist consultant said, well, you know, her condition appears to have improved. There's no cognitive testing. There's no, you know, to, even though the plaintiff was complaining about having cognitive problems, there were no cognitive test results. And, you know, it's perfectly permissible and for, for a claims administrator to ask for objective medical documentation, certainly for conditions where it can be objectified, like cognitive testing. There are cognitive, you know, abilities. There are tests for that. But that was not, they were never submitted. Even a year later, I don't believe they actually submitted any cognitive test results. Let me see. You only have about 30 seconds left, so why don't you wrap up your argument? You know, it's all in the briefs. I really don't have anything else to add, unless you have any questions. We don't have any further questions. Thank you for your argument. Your Honor, I don't know if I forgot or not, but in the initial complaint, we asked for attorney's fees and court costs. In the brief, I might have overlooked. I'd like to repeat that for Ms. Miller. And then also, anyway, I don't know. I was too nervous. I don't know if I asked that or not, costs from attorney's fees. Also, the main thing, Your Honor, this medication, bromocriptine, I believe, something like that, the wording says it appears like when she takes this, she stops taking this, appears like it's going to improve some kind of a speculation. Well, for a doctor, I suppose it could be normal. But it has to be followed. This lady is fired from her job. I'm sorry. All right. You can finish your sentence. And she is home, curtains closed, disabled, mentally disabled. And then she's supposed to do all this fine professional rights profession. Somebody has to help. That's the reason this court decides, Your Honor, including this Bulton Court decision and the other reason. It's important. Somebody, the plan has to provide some help to this lady. All right. Well, we have both of your arguments in mind. Thank you for your argument. The matter will be submitted. I am going to alter calling the cases at this point. The next matter I'm going to call to be heard right now is Pocatello Education v. Ben.
judges: Canby, Tashima, Callahan